# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**DONNA J. HOLLENBACH,**

    **Plaintiff,**

vs.                                                             Civ. No. 01-0551 MCA/RLP

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1. This matter is before the Court on the motion of Plaintiff, Donna J. Hollenbach, to Reverse Administrative Agency Decision, filed December 20, 2001.(Doc. No. 7).

**I. Procedural Background**

2. Plaintiff protectively filed applications for disability insurance benefits and supplemental security income benefits on May 29, 1996, alleging disability as of May 5, 1995, due to back and knee injuries, headaches, depression, jaw and gastric problems. (Tr. 69, 251, 81-86). Her claim was denied at the first and second levels of administrative review, and by an Administrative Law Judge ("ALJ" herein) following a hearing. The ALJ found that Plaintiff had severe impairments of depression and back pain which did not qualify as per se disabling at step three of the sequential evaluation process. (Tr 15). He further found that despite these conditions, Plaintiff retained the residual functional capacity for simple, low-stress, sedentary work activity. Utilizing the services of

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

a vocational expert, he further found that she could perform her past relevant work as a manicurist, as well as the jobs of Information Clerk and Parking Lot Attendant, and therefor was not disabled under the terms of the Social Security Act. (Tr. 25-26). Plaintiff appealed the ALJ's decision to the Appeals Council which declined review on March 15, 2001.

## II.     Issues Raised on Appeal

3.     Plaintiff seeks review under 42 U.S.C. §405(g) asserting that the ALJ made the following errors in denying her claim:

    (A)     Failing to properly analyze her back injury pursuant 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.05(C);

    (B)      Failing to properly analyze Plaintiff's credibility under criteria of **Kepler v. Chater**, 68 F.3d 387 (10th Cir. 1995);

    (C)     Failing to properly analyze Plaintiff's residual functional capacity;

    (D)     Failing to properly analyze Plaintiff's claim at step four of the sequential evaluation process.

    (E)     Failing to support his finding at step five of the sequential evaluation process with substantial evidence.

## III.     Standard of Review and Applicable Law

4.     This Court reviews the Commissioner's decision to determine whether the record contains substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the

Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

5. The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant at steps one through four; the Commissioner bears the burden of proof at step five. **Id.**

### IV. Vocational, Medical and Testimonial Evidence.

6. Plaintiff was born on March 31, 1952. She attended school to the twelfth grade but did not graduate. (Tr. 85, 277). She has vocational training as a cosmetologist (Tr. 85) and has worked as a hair stylist and manicurist. (Tr. 116).

7. Plaintiff was treated at the University of New Mexico Hospital ("UNMH" herein) on May 5, 1995, for injuries sustained in an automobile accident. (Tr. 135-145). Radiologic studies were positive for minor degenerative changes without fracture to the lumbar spine, ligamentous injury to her cervical spine, and a small C6-7 posterior disc protrusion. On neurological examination her motor strength was 5/5 throughout, and her sensation was intact. She was discharged the following morning with a cervical collar and pain medication.

8. She began receiving treatment from George Swajian, D.O., an orthopedic and hand surgeon, on May 12, 1995. (Tr. 157-160). On physical examination she exhibited pain, muscle spasm and significant loss of range of motion of the cervical, thoracic and lumbar spine, good upper extremity strength, including her fingers and wrists, intact dermatomes of T12-S1, a normal straight leg raising test, and no cervical-lumbar radiculitis or radiculopathy. Dr. Swajian reviewed her x-ray studies from

3

UNMH, and felt that evidence of a disc herniation in the cervical spine was equivocal, but that there had been substantial trauma to the neck. He ordered additional radiologic testing which disclosed several fractured ribs, an occult fracture of the right fibular head, and probable nondisplaced fracture the manubriosternal joint with mild arthritis. (Tr. 156).

9. Plaintiff was evaluated by Dr. Mark Berger, a neurologist, on May 17 and June 6, 1995. (Tr. 146-148). He documented limited range of neck motion, with good tone, bulk and 5/5 strength and sensation throughout. Based on examination, testing and review of her radiologic studies from May 5, 1995, Dr. Berger stated that Plaintiff had no spinal lesions compressing neural structures, that her headaches were consistent with trauma, that she had good prognosis for eventual recovery, and that her back pain was most probably musculoskeletal in origin.

10. Plaintiff continued seeing Dr. Swajian on a monthly basis until October 1995. (Tr. 150-155, 170-171). By July 19, 1995, her rib and chest pain had markedly subsided and her fibular fracture was 90% healed. Dr. Swajian started her on a six-eight week course of physical therapy. On August 15, 1995, Dr. Swajian noted markedly reduced muscle spasm, excellent thoraco-scapular motion, and marked reduction in left knee discomfort with substantial improvement in knee tracking. At his final evaluation on October 4, 1995, he indicated that there had been substantial improvement in range of motion and pain reduction despite Plaintiff having attended a limited number of physical therapy sessions. He suggested she continue therapy at a spa facility.

12. Plaintiff was seen at UNMH-ER on July 24, 1995, for complaints of right upper quadrant pain and cramping. (Tr 179-180). Gastro-esophogeal reflux disease, hiatal hernia and hemangioma[2] of

---

[2]"A congenital anomaly, in which proliferation of blood vessels leads to a mass that resembles a neoplasm; it can occur anywhere in the body but is most frequently noticed in the skin and subcutaneous tissues; most hemangiomas undergo spontaneous regression." Stedman's Medical Dictionary, 27th Edition, 2000.

the left lobe of the liver were eventually diagnosed. (Tr. 175-176, 173). As of January 1996, Plaintiff reported improvement in stomach bloating and pain, but continued heartburn. On physical examination her spine and rib cage were non-tender, and her right upper quadrant was tender over the liver with deep inspiration. Additional testing was scheduled (Tr. 172), but there is no evidence in the record that it was obtained.

12. On May 3, 1996, Plaintiff saw Dr. Chris Merchant, who had been her family physician prior to her auto accident. (Tr. 186). He documented tenderness and spasm in her cervical spine, tenderness in her thoracic spine and right upper quadrant abdominal tenderness. Examination of her extremities was negative. Dr. Merchant prescribed pain medication and anti-acids, and asked her to return in one month.

13. When she returned on June 5, 1996, Plaintiff complained of increased neck pain and spasm, mid thoracic pain, low back pain with frequent locking of the back on bending, anterior chest wall pain, and depression. Her neck, chest wall, back and knee were tender, and she had spasm in the neck and back. Dr. Merchant diagnosed cervical, thoracic and lumbar pain and spasm, knee and anterior thigh pain and depression. He prescribed pain medication and an anti-depressant, and suggested that she consult with Dr. Berger for a comprehensive at-home rehabilitation program. (Tr. 184). Plaintiff took the anti-depressant for a time, and found that it helped her. She stopped taking the medication stating that she could not afford it. (Tr. 211).

14. Charles Mellon, M.D., a consulting psychiatrist, evaluated Plaintiff on September 30, 1996 at the request of the Disability Determination Unit. (Tr. 191-193). Based on interview and mental

status examination[3], Dr. Mellon diagnosed Major Depression, Moderate, with a currant Global Assessment of Functioning (GAF) of 48. He concluded that Plaintiff was clearly depressed, had received no treatment for depression, and that her prognosis was guarded without treatment.[4] (Tr. 193).

15. On October 23, 1996, Plaintiff advised Dr. Merchant that she would be seeking physical therapy, depression medication and further care at UNMH. She registered for indigent care, which permitted her to be treated at any time. (Tr. 211, 290, 100).

16. Plaintiff had a breast exam at UNMH on November 6, 1996, which was normal. She was referred to the Mental Health Center for treatment of depression. (Tr. 230, 228). She did not act on this referral. She returned to UNMH on November 22, 1996, for evaluation and removal of apparently benign lesions on her face and chest. (Tr. 229). On February 4, 1997, she requested a mammogram, referral to the UNMH orthopedic department and medication for back pain. (Tr. 227). Her breast exam was again normal. She was scheduled for a mammogram and referred to the orthopedic clinic. She was treated for acute bronchitis by Dr. Merchant shortly before her appointment at the orthopedic clinic. Dr. Merchant again suggested that she go to the UNM Mental Health center for treatment of depression. (Tr. 209). Plaintiff was seen at the UNM orthopedic clinic

---

[3] Plaintiff appeared tired. She was cooperative with normal psychomotor activity and a slow gait. She cried, but evidenced no repetitious activity or speech abnormality. Her mood was moderately depressed and her affect was decreased in range and intensity. Her orientation, registration, attention, calculation and recall were entirely normal. Her intellectual functioning was judged as average. Her thought form was coherent, logical and goal directed with no looseness of associations or flight of ideas. She had no hallucinations, delusions or sustained preoccupation of thought, and no suicidal or homicidal ideation. Her judgment was impaired due to depression, and her insight was limited because she was focused on her physical problems and was not dealing with her depression. (Tr. 192-193).

[4] There is no indication that Plaintiff told Dr. Mellon that she had noted improvement while on anti-depressant medication. (See. Tr. 191, "She has not been treated for depression.").

on March 5, 1997, complaining of right leg symptoms three times a year, which were decreasing in frequency, and back pain which had "gradually been getting better after long episodes of physical therapy." (Tr. 224-225). She indicated that she used over-the-counter pain medication as needed. Her physical examination was essentially normal, with the exception of 4/5 strength on extension and flexion of the right hip. X-rays of her right knee were negative. She was advised to treat her chronic back pain with home stretching, use over-the-counter medication as needed, and to swim and use warm heat packs when she experienced pain or spasm.

17. Plaintiff tripped and fell on April 3, 1997, and returned to UNMH on April 7 complaining of cervical and thoracic pain. (Tr. 217-222). On exam she was tender to palpation over her thoracic and cervical paraspinous muscles, and had pain on twisting and flexing of her trunk. Her arm and leg strength was 5/5 in all extremities, her reflexes were equal and her sensation was intact. She was provided pain medication and muscle relaxants, and referred to physical therapy. There is no medical evidence that she attended physical therapy as recommended.

18. Plaintiff did not seek additional medical care until February 1998, when she had a pap smear. (Tr. 245). This was followed by a mammogram in March and additional gynecological procedures in April. (Tr. 245-249).

19. Dr. Merchant prepared two documents titled "Physician's Questionnaire." The first is dated July 28, 1997, the second October 15, 1998. He did not examine Plaintiff in connection with the preparation of either questionnaire. On July 28, 1997, he stated that Plaintiff had been unable to work since May 5, 1995, due to severe pain caused by multiple disc herniations and soft tissue injury as confirmed by x-ray, CT scan, MRI and exam, that he had treated her with pain medication and had referred her to UNMH for pain management and psychiatric care. (Tr. 212-214). On October 15,

7

1998, he stated that she had injuries to her cervical, thoracic and lumbar spine with severe pain and spasm, depression and GERD, evidenced by marked tenderness at T4-7 and L3-S1, decreased knee reflexes and marked back pain, that he had treated her with pain medication, antibiotics and antidepressants, and had referred her for physical therapy and counseling. (Tr. 238-239). He also wrote that she met the criteria for §1.05(B)(2) and (C) (1-2) of the Listing of Impairments.[5] Dr. Merchant prepared functional capability forms with each questionnaire, which are summarized in Appendix A, attached.

20. At the administrative hearing on October 29, 1998, Plaintiff testified that she had not seen a physician for a year due to lack of funds or insurance. (Tr. 289). She then amended this statement and said that she could be seen at UNMH whenever she wanted, but that it was not always easy to get from her home in the mountains to the hospital (Tr. 290) and that she just got tired of going to the hospital for her back. (Tr. 298-299). She thought she had been set up for regular psycho-therapy or counseling at UNMH, but didn't get it because for a time she had trouble leaving her house. (Tr. 293). She also stated that if she qualified for or could afford medical care, counseling or therapy, she would get it "quick." (Tr. 295).

21. Plaintiff testified that she could walk 15-20 minutes at a time, sit for 15-30 minutes at a time and lift three pounds or one-half gallon of milk. (Tr. 285-287). She had started working for a friend approximately three hours a day, three days a week, answering the phone and reviewing paperwork. She could set her own hours and lie down at will at this job, but at times could not make the full three hours. (Tr. 174, 293- 294). She had a valid driver's license, and drove short distances three

---

[5]Plaintiff has abandoned any claim that she meets Listing §1.05(B)(2). There is no evidence that Plaintiff sustained "multiple fractures of the vertebrae with no intervening direct traumatic episode."

8

times a week. She had no social or recreational activities, but did visit a neighbor occasionally, a brother twice a year and attended church once a month. (Tr. 280-284). She did light cooking and shopping with her daughter, who did all the lifting. (Tr. Tr. 283-284). She had debilitating headaches (Tr. 294), problems with her right shoulder, left elbow, right knee, spine, jaw and depression (Tr. 279-280), and could not take medication because of hepatitis C (Tr. 296). She also stated that she had breast tumors and cervical cancer. (Tr. 301).

## V. Discussion

### A. Plaintiff Did Not Establish Disability Under the Criteria of Listing §1.05(C), 20 C.F.R. Pt 404, Subpt. P, App. 1.

22. Plaintiff contends that the ALJ failed to discuss the evidence or reasons for determining that she was not disabled at step three, as required by **Clifton v. Chater**, 79 F.3d 1007, 1009 (10th Cir. 1996), and that she in fact she meets the requirements of listing §1.05(C) for vertebrogenic disorders. This claim is without merit.

23. The ALJ discussed the medical evidence in detail. I find that his analysis provides significant substance for review, which is what **Clifton** requires. An individual is considered disabled under listing §1.05(C), if she meets the following criteria:

> C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1. Pain, muscle spasm and significant limitation of motion of the spine; and
>
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Subpt. P., App. 1, §1.05(C).

Plaintiff has the burden at step three of demonstrating, through medical evidence, that her

impairments "meet all of the specified medical criteria" contained in a particular listing. **Sullivan v. Zebley**, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). There is no evidence that Plaintiff has significant motor loss with muscle weakness and sensory and reflex loss. (See, e.g., Tr. 137-motor 5/5 throughout; Tr. 158-159 - good strength of flexion and extension of the fingers; Tr. 147 - good tone, bulk and 5/5 strength throughout on motor exam; Tr. 227 - 2+ DTRs; Tr. 225 - Normal reflexes).

24. Plaintiff argues that Dr. Merchant's October 13, 1998, opinion is evidence that she meets the specified criteria for Listing §1.05(C). A physician's opinion of disability at step three is not binding on the Commissioner. **Castellano v. Secretary of Health & Human Servs.,** 26 F.3d 1027, 1029 (10th Cir. 1994). Despite Dr. Merchant's conclusion, there is no medical evidence that Plaintiff has all of the medical findings required for a finding of disability under Listing §1.05(C). 20 C.F.R. §404.1525(d) ("We will not consider your impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing of that Impairment.").

### B. The ALJ Applied Correct Legal Principles in Evaluating Plaintiffs Credibility, and His Assessment Is Supported by Substantial Evidence.

25. In assessing credibility, the ALJ should consider:

> The levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

**Thompson v. Sullivan**, 987 F.2d 1482, 1489 (10th Cir. 1991) (quoting **Hargis v. Sullivan**, 945 F.2d 1482, 1489 (10th Cir. 1991)).

26. Plaintiff contends that the ALJ gave no explanation for finding that Plaintiff's testimony as to symptoms and functional limitations was not credible. To the contrary, the ALJ pointed out that:

1. Plaintiff testified that she had cervical cancer. There is no evidence of this in the medical record. (Tr. 16).

2. Plaintiff reported improvement to her doctors in 1995-1996, she ambulated well, had normal strength negative straight leg raises and good range of motion (Tr. 23, 150-151, 170, 225).

3. Plaintiff had not seen a doctor for her back for a year prior to the administrative hearing. (Tr. 16, 23).

4. Plaintiff had access to treating sources and financial assistance, but did not comply with recommendations that she obtain mental health care. (Tr. 23-24, 209, 211, 228, 290).

5. Plaintiff had access to medical care, both in terms of transportation and indigent availability, and yet she had taken little advantage of these options. (Tr. 24, 100, 290).

6. Although Plaintiff claimed she could not afford care or medication, she also stated that she had gotten tired of going to doctors. (Tr. 23, 298).

7. Plaintiff's headaches were responsive to conservative treatment with over-the-counter medication, while her back pain, chest pain and knee pain resolved with physical therapy and medication. (Tr. 24, 150-151, 162, 170-171, 225, 280, 302).

The recitation of these reasons constituted the ALJ's explanation of why the specific evidence available to him led him to conclude that Plaintiff's subjective complaints were not credible, as required by **Kepler v. Chater**, 68 F.3d 287 (10th Cir. 1995). The ALJ's credibility determination is afforded considerable deference **Gay v. Sullivan**, 986 F.2d 1336, 1339 (10th Cir. 1993). I find that the ALJ's rejection of Plaintiff's credibility is not contrary to law, was based on substantial evidence and should be upheld.

### C. The ALJ Did Not Err in His Assessment of Plaintiff's Residual Functional Capacity.

27. The ALJ is required to determine Plaintiff's residual functional capacity (RFC), defined as what she could still do despite her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). S.S.R. 96-8p, 61 FR 34474, clarifies how an ALJ should assess an individual's RFC at steps four and five of the sequential evaluation process. The ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations), discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. 61 Fed.Reg. 34474, 34478 (footnote omitted). S.S.R. 96-8p does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Rather, an ALJ must explain how the evidence supports his or her conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work activities. The ALJ met these requirements.[6] (Tr. 24-25).

28. In arriving at Plaintiff's RFC, the ALJ rejected the opinions of Dr. Merchant regarding Plaintiff's functional abilities. The ALJ expressed legitimate and specific reasons for doing so: (1) Dr. Merchant was not a specialist in psychiatry or orthopedics, (2) he treated Plaintiff on only two occasions for her orthopedic complaints; (3) he based his opinion on his assumption that Plaintiff had

---

[6]As regards Plaintiff's mental RFC, the ALJ discussed the evaluation by the agency psychologist and the mental status examination performed by Dr. Mellon. (Tr. 24-25; see also ¶14, supra.). As regards Plaintiff's physical RFC, the ALJ discussed Plaintiff's radiologic findings, substantial improvement in range of motion and pain control with physical therapy, recorded ability to ambulate well, normal strength and negative straight leg raising on physical examination, sporadic medical treatment, daily activities and use of over the counter medication for pain. (Tr. 23-25; See also ¶¶ 8, 10, 16, supra.).

multiple disc herniations, for which there is no evidence in the medical record[7], and (4) the medical record does not support his conclusions.[8] (Tr. 21-22). The opinion of a treating physician is entitled to deference only if it "is well supported by clinical and laboratory diagnostic techniques and. . . is not inconsistent with other substantial evidence in the record." **Castellano**, 26 F.3d at 1029; see 20 C.F.R.§§404.1527(d)(2), 416.927(d)(2). Substantial evidence supports the ALJs determination that Dr. Merchant's opinion was not supported by clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence in the record. Accordingly, the ALJ did not err in discounting Dr. Merchant's opinion when evaluating Plaintiff's RFC.

29. Plaintiff also contends that the ALJ failed to include nonexertional impairments in her RFC. This is, in essence, another attack on the ALJ's credibility determination. Simply put, the ALJ found that Plaintiff's headaches, pain and depression were or could be controlled by medical means. There is no credible evidence that she has any impairment in hand usage. The ALJ's determination on these issues is supported by substantial evidence.

> **D. Although the ALJ Properly Found that the Job of Manicurist was Past Relevant Employment, He Did Not Make the Findings Required at Step Four of the Sequential Evaluation Process.**

30. Plaintiff contends that the ALJ erred at step four of the sequential evaluation process by finding that she could perform her past relevant employment as manicurist because the job of manicurist was never her primary job and the ALJ failed to make the findings required at step four.

---

[7]Dr. Swajian and Dr. Berger, both treating physicians, found no evidence of disc herniation. (See ¶¶ 8 & 9 , supra).

[8]For example, Plaintiff asserts that Dr. Merchant indicated on a functional capacity form that she could never use her right hand for fine manipulation, and that this should have been factored into her RFC. (Tr. 215). There is no medical evidence of any impairment to Plaintiff's hands, and the only time Dr. Merchant recorded an examination of Plaintiff's extremities, no problem was noted. (Tr. 186).

31. There is no requirement that past relevant work be the "primary" job held by the claimant. Plaintiff's past work experience qualifies as past relevant work if it was done within the last fifteen years, lasted long enough for her to learn to do it, and earned enough money to be considered substantial gainful activity. See §§20 C.F.R. 404.1565(a), 416 .965(a). Plaintiff has the burden of proof on these elements. **Musgrave v. Sullivan**, 966 F.2d 1371, 1376 (10th Cir. 1992) (Plaintiff has the burden of proof at step four). The work background prepared by Plaintiff stated that she had worked as a hairstylist and manicurist in 1985-1986. (Tr 116). Plaintiff offered no evidence that she had not learned that job, or had not earned enough money for that job to be considered substantial gainful activity. Accordingly, I find that the ALJ did not err in finding that one of Plaintiff's past relevant jobs was as a manicurist.

32. The ALJ did, however, fail to make the required findings regarding the demands of Plaintiff's past relevant work and the ability of the claimant to perform those demands. Step four of the sequential evaluation process is comprised of three phases: (1) Evaluation of the claimant's RFC, (2) determination of the physical and mental demands of the claimant's past relevant work, and (3) determination of whether the claimant has the ability to meet the job demands found in phase two despite the physical and/or mental limitations found in phase one. **Winfrey v. Chater**, 92 F.3d 1017, 1023 (10th Cir.1996). Plaintiff has the burden of proving disability at step four; however, the ALJ does have a duty "of inquiry and factual development." **Henrie v. United States Dep't of Health & Human Servs.**, 13 F.3d 359, 361 (10th Cir.1993)

33. As previously discussed, the ALJ determined that Plaintiff had the RFC for simple, low-stress, sedentary work activity. (Tr. 25). By including "low-stress" in his assessment of Plaintiff's RFC, he necessarily found that Plaintiff had some level of mental limitation. While the ALJ elicited testimony

from a vocational expert ("VE" herein) as to the exertional and skill requirements for the job of manicurist, he made no inquiry or finding related to the stress demands associated with that job. This is error. **Winfrey v. Chater**, 92 F.3d at 1024, citing SSR 82-62. Soc. Sec. Rep. Serv., Ruling 1975-1982 at 812.

### E. The ALJ's Finding at Step Five of the Sequential Evaluation Process that Plaintiff Could Perform the Job of Information Clerk is Based on Correct Legal Principles, and is Supported by Substantial Evidence.

34. The ALJ continued this evaluation of Plaintiff's claim at step five. The ALJ asked the vocational expert to assume an individual with Plaintiff's age, educational background and experience, who was limited to work that was sedentary, low-stress, non-complex but not necessarily simple. (Tr. 306). The VE responded that with these limitations, an individual could perform the job of information clerk (sedentary, semi-skilled), DOT 237.367-042,(Tr. 307), or parking lot attendant (light, unskilled).

35. Plaintiff correctly challenges the ALJ's finding that she could perform the job of parking lot attendant. The exertional requirements of parking lot attendant are in excess of the sedentary work the ALJ determined Plaintiff could perform. Although the VE stated that she had reduced the number of available positions in the job category to accommodate a sit/stand option[9], she did not address differences between sedentary and light work in terms of lifting, carrying, walking, standing and sitting, and therefor did not provide substantial evidence to support a finding that Plaintiff has the RFC for the light job of parking lot attendant.

36. Plaintiff contends that the finding she had the mental RFC for simple work necessarily excludes the mental RFC for the semi-skilled job of information clerk. She also contends that Dr.

---

[9]The ALJ did not find that Plaintiff required a sit/stand option.

15

Merchant's opinion establishes that she does not have the physical RFC for sedentary work. I have already discussed the ALJ's legitimate and specific reasons for rejecting Dr. Merchant's opinions. (See ¶ 28, supra.).

37. The regulations divide skill requirement into three categories, unskilled, semi-skilled and skilled. 20 C.F.R. §§404.1568, 416.968. Unskilled work is defined as that "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," usually within 30 days, and which requires little specific vocational preparation or judgment. Id. Semi-skilled work is defined as that "which needs some skills but does not require doing the more complex work duties," and may require alertness, close attention or dexterity. Id. The regulations do not list the amount of time required to learn semi-skilled work. The job of Information Clerk requires one to three months of vocational preparation, DOT 237.367-042, which the VE described as at the "bottom end" of semi-skilled work. (Tr. 307).

38. As previously indicated, the hypothetical posed to the VE asked her to assume the ability to perform jobs that were sedentary, low-stress, non-complex but not necessarily simple. (Tr. 306). The VE's testimony provides substantial evidence supporting the ALJ's determination that Plaintiff retained the mental and physical RFC for the job of information clerk. The VE's testimony also establishes that this job exists in adequate numbers in the regional and national economies. (Tr. 307). Therefor, the ALJ correctly determined at step five of the sequential evaluation process that Plaintiff was not disabled.

**VI.    Recommended Disposition**

39. For the reasons stated above, I recommend that Plaintiff's Motion to Reverse be denied and that the decision of the Commissioner, denying Plaintiff's applications for Disability Insurance

Benefits and Supplemental Security Income, be affirmed.

/s/ Richard L. Puglisi
**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**

## Appendix A

| Function | July 28, 1997 | October 15, 1998 |
|---|---|---|
| Sit | 1 hour at a time<br>1 hour per 8 hour day | 1 hour at a time<br>2 hours per 8 hour day |
| Stand | 1 hour at a time<br>1 hour per 8 hour day | 1 hour at a time<br>2 hours per 8 hour day |
| Walk | 2 hour at a time<br>2 hours per 8 hour day | 1 hour at a time<br>3 hours per 8 hour day |
| Lift | 5 lbs. occasionally | Unable to lift any weight |
| Carry | Unable to carry any weight | 5 lbs. occasionally |
| Repetitive grasping R hand: | Yes | Yes |
| Repetitive grasping L hand: | Yes | Yes |
| Fine manipulation R hand: | Yes | Yes |
| Fine manipulation L hand: | Yes | No |
| Push/Pull arm controls R hand: | No | Yes |
| Push/Pull arm controls L hand: | Yes | Yes |
| Push/Pull leg controls, Right leg: | No | No |
| Push/Pull leg controls L leg: | No | Yes |
| Bend | Never | Illegible |
| Squat | Never | Illegible |
| Crawl | Occasionally | Illegible |
| Climb | Occasionally | Illegible |
| Reach | Never | Illegible |

(Compare Tr. 215-216 with Tr. 241-242).